This document was signed electronically on March 31, 2017, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: March 31, 2017



ALAN M. KOSCHIK
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re | ) | |
| | ) | Case No. 15-50618 |
| CARLA M. LAWSON, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Adversary Proceeding No. 15-05094 |
| ———————————— | ) | |
| | ) | |
| HAROLD A. CORZIN, Trustee, | ) | Judge Alan M. Koschik |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CARLA M. LAWSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM DECISION ON
# CROSS-MOTIONS FOR SUMMARY JUDGMENT

Harold A. Corzin, the duly-appointed Chapter 7 trustee (the "Trustee") in the underlying

bankruptcy case in which this adversary proceeding arises, has filed a complaint for declaratory

and injunctive relief regarding the right, title, and interest of the parties in the 403(b) custodial account (the "Plan") of defendant Todd A. Osborne ("Osborne"), the husband of debtor Carla M. Lawson (the "Debtor"). The Debtor had filed a complaint for divorce against Osborne prior to filing her Chapter 7 petition. As of the petition date, the Ohio domestic relations court with jurisdiction over the divorce action, the Stark County Court of Common Pleas Family Court Division (the "State Court"), had entered an order styled as a "judgment entry" approving a property settlement between the Debtor and her husband, but not a formal qualified domestic relations order ("QDRO") as defined in the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"). The Trustee asserts that this particular posture allows him to stand in the shoes of the Debtor and ultimately receive the Debtor's share of the funds from the Plan upon completion of the divorce without running afoul of either the ERISA-required anti-alienation provision of the Plan itself or the exemptions applicable to qualified tax-advantaged retirement accounts under Ohio and federal bankruptcy law.

The Debtor and the United States of America (the "United States"), on behalf of its defendant agency, the Internal Revenue Service (the "IRS"), each filed answers substantively contesting the Trustee's claims. Osborne also filed a pro forma answer but did not substantively contest the Trustee's claims and did not take part in the subsequent summary judgment briefing or oral argument that is the subject of this Memorandum Decision.

The following motions are currently before the Court: First, the Trustee's motion for summary judgment (Docket No. 26) (the "Trustee Motion"); second, the United States' motion for partial summary judgment (Docket No. 27) (the "United States Motion");[1] and third, the

---

[1] The complaint against the United States was dismissed on grounds of ripeness on June 16, 2016. However, the United States has not been dismissed as a party and its motion for partial summary judgment implicates matters that are ripe for adjudication, not the Trustee's claims under 11 U.S.C. § 505 that were unripe. The United States Motion therefore was not withdrawn following entry of the order dismissing the complaint against the United States. At oral

Debtor's motion for summary judgment (Docket No. 31) (the "Debtor Motion"). The Trustee Motion, United States Motion, and Debtor Motion were each filed on April 1, 2016. On April 15, 2016, the Trustee filed responses to both the Debtor Motion and United States Motion (Docket Nos. 33 and 35, respectively), and the United States and the Debtor each responded to the Trustee Motion (Docket Nos. 36 and 37, respectively). The parties each filed replies in support of their respective position on April 22, 2016. (Docket Nos. 38-41.) At the request of the parties, the Court conducted an oral argument on May 9, 2016.

The collection of issues presented by the eleven briefs and subsequent oral argument in this matter can be summarized as follows:

(1) Whether the State Court's order in the Debtor's divorce case constitutes a domestic relations order, and whether it provided the Debtor a beneficial interest in her husband's Plan even though that order is not a QDRO as defined by ERISA;

(2) Whether the Debtor had a beneficial interest in the Plan by virtue of her status as Osborne's designated beneficiary and/or his spouse;

(3) Whether an Ohio debtor has a present interest in a share of her spouse's 403(b) retirement plan account pursuant to Ohio's domestic relations law upon filing a divorce action;

(4) Whether the Debtor's interest in her husband's Plan is property of her bankruptcy estate pursuant to 11 U.S.C. § 541, or is excluded from property of the estate pursuant to 11 U.S.C. § 541(c)(2);

(5) Whether any interest obtained by the Debtor prior to the entry of a QDRO can be exempted from her bankruptcy estate pursuant to 11 U.S.C. § 522; and

---

argument, the Court suggested that, at minimum, the memoranda of the United States in support of its Motion and in opposition to the Trustee's Motion served as *amicus curiae* briefs. No party to this adversary proceeding objected to the Court's consideration of the United States Motion and the legal memoranda filed by the United States.

(6) Whether it is legally permissible for a panel trustee of a bankruptcy estate to obtain a QDRO under ERISA and related provisions of the Tax Code, in lieu of the divorcing debtor spouse, to effect an assignment of benefits in a 403(b) plan account owned by the debtor's non-filing ex-spouse to the debtor's bankruptcy estate administered by the trustee.

## JURISDICTION AND VENUE

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012.  Venue is proper pursuant to 28 U.S.C. § 1409(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E), and (O).

## SUMMARY JUDGMENT STANDARD

In bankruptcy cases, including adversary proceedings, a party may move for summary judgment at any time before 30 days before the initial date set for an evidentiary hearing on any issue for which summary judgment is sought, unless a different time is set by local rule or the court orders otherwise.  Fed. R. Bankr. P. 7056 (otherwise incorporating Fed. R. Civ. P. 56); *see also* Fed. R. Bankr. P. 9014(c).  When a party so moves, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).  A Plaintiff movant must establish all essential elements supporting its claim in this fashion; a defendant must establish that any one (or more) essential elements of Plaintiff's claim fails, or establish all elements of one or more of defendant's affirmation defenses, in order to obtain a defense judgment by summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

4

Evidence presented in support of summary judgment is viewed in the light most favorable to the non-moving party "drawing all reasonable inferences in its favor." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986). However, if a moving party meets its burden to establish a lack of genuine dispute as to a material fact, the burden then shifts to the non-moving party to "come forward with evidence which would support a judgment in its favor." *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e). In responding in this way to a motion for summary judgment, the non-moving party may not rely on a "mere scintilla of evidence" in support of its opposition to the motion. There must be enough evidence presented in which a jury could reasonably find for the non-moving party. *Zenith*, 475 U.S. at 586.

In this adversary proceeding, and on the cross-motions for summary judgment currently before the Court, the parties are of the unanimous opinion that summary judgment is appropriate here without the need for a trial. The Court agrees. The disputes before the Court concern only the correct legal conclusions based on undisputed facts.

## UNDISPUTED FACTS AND PROCEDURAL HISTORY

The parties submitted a substantial stipulated record for the Court to take under advisement, including exhibits. (Docket No. 24.) The following facts are derived from those stipulations, stipulated exhibits (which include, *inter alia*, the State Court's docket through June 2, 2015), and this Court's own docket.

The Debtor married Todd A. Osborne, also a defendant in this action, on or about May 16, 1998. She filed a complaint for divorce against him in the State Court on March 7, 2014.

Osborne is employed by Summa Akron City Hospital/Summa Health System ("Summa"). Through that employment, he holds an interest, as a plan participant, in a retirement

plan known as the Summa Health 403(b) Plan (as previously defined, the "Plan"). A copy of the

Plan document was stipulated as an exhibit. (Docket No. 24 at ¶8 and Ex. B.) Section 13.9 of

the Plan provides as follows:

> None of the benefits, payments, proceeds, claims, or rights of any Participant or Beneficiary hereunder shall be anticipated, encumbered, or in any other manner alienated or assigned by a Participant or Beneficiary, nor shall they be subject to any legal process, bankruptcy proceedings, or the interference or control of any creditor, spouse or divorced spouse, or other person except for the creation, assignment or recognition of a right to any benefit payable with respect to a Participant pursuant to a Qualified Domestic Relations Order, as defined in Section 206(d)(3) of ERISA.

Osborne opened his Plan account on or about July 8, 1999. The Debtor is not and has

never been employed by Summa, and has never made any direct contributions into Osborne's

Plan account.

Osborne, who is still living, has designated the Debtor as the primary beneficiary of his

interest in the Plan account, and Jessie Lawson as sole contingent beneficiary. (Docket No. 24 at

¶12 and Ex. C.)

On January 6, 2015, the State Court held a hearing on the divorce proceeding during

which Osborne's counsel read into the record the terms of the separation agreement negotiated

by and between the Debtor and Osborne, which included an equal division of the assets in the

Plan account between the Debtor and Osborne. (Docket No. 15 at ¶16.) The parties have

stipulated to the accuracy of a transcript of those proceedings. (Docket No. 24 at ¶15 and Ex. E.)

Two days later, on January 8, 2015, Judge Rosemarie A. Hall of the State Court entered an order

styled as a "Judgment Entry," which is a stipulated exhibit here (Docket No. 24 at ¶17 and Ex. F)

(the "Judgment Entry"), stating that "the proposed shared parenting plan and separation

agreement are approved, adopted, and incorporated into the final decree. The final decree and

shared parenting plan shall be filed within 21 days." *Id.* The final decree and shared parenting

6

plan were not filed within 21 days. In fact, they still had not been filed as of March 20, 2015, the day the Debtor filed her Chapter 7 petition commencing her bankruptcy case. (Docket No. 24 Ex. D.)

Harold A. Corzin was duly appointed as the chapter 7 trustee for the bankruptcy estate of the Debtor following the filing of the Debtor's petition.

The Trustee filed his complaint in this adversary proceeding (the "Complaint") on August 20, 2015. The Trustee alleged that the Debtor's "equitable claim to an equal division and distribution of the marital property" is property of the estate (Compl. ¶ 8), and that the Trustee was entitled to an order directing distribution of such property interest to the Trustee. (Compl. ¶ 9). The Trustee's complaint further asks this court "to enter its order authorizing and empowering the trustee to execute a QDRO directing distribution of such funds to the estate and compelling the defendant, Todd Osborne, to join in such [QDRO]." (Compl. ¶ 12.)

Osborne, *pro se*, filed his answer on September 22, 2015.

The Debtor filed her answer and crossclaim against Osborne on September 23, 2015.

The United States, after an extension, filed its answer on October 2, 2015.

Osborne, by then with assistance of counsel, filed his reply to the Debtor's crossclaim on October 13, 2015.

Following a further pretrial after the close of discovery, the Court entered a scheduling order setting simultaneous deadlines for dispositive motions, response briefs, and replies. The Court informed Osborne that his participation in the dispositive motion briefing was not required by the Court in light of the fact that the Trustee and the Debtor were battling over the one-half share of his Plan account already awarded to the Debtor, his ex-spouse, by the State Court. In fact, Osborne did not file or respond to any dispositive motions. The Trustee and Debtor each

filed a motion for summary judgment; the United States filed a motion for partial summary judgment and a separate motion to dismiss the claims in the complaint against itself.[2] The Trustee responded to both the Debtor's and the United States' Motions. The Debtor and United States each responded to the Trustee's Motion. The parties' reply briefs followed.

At the request of the parties, the Court held an oral argument on the cross-motions for summary judgment on May 9, 2016. At the conclusion of the oral argument, the Court took the matter under advisement.

## LEGAL ANALYSIS

As in all bankruptcy cases of individual debtors, the Court must determine what legal or equitable interests the Debtor had in property as of the commencement of her case, which interests in her property became property of the bankruptcy estate that the Trustee may administer, and which of those assets may be exempted from the estate and claims of the Debtor's creditors. More specifically, the Court here is called upon to answer those questions with respect to the Debtor's rights to her share of her husband's retirement account after filing a divorce action but before effectuating a division of that account via a transfer of assets authorized by the entry of a QDRO. The peculiar circumstances of this case have caused these questions to be extraordinarily complex.

The Court undertakes these inquiries in this case by examining the distinct forms of interests various parties argue the Debtor had in the Plan assets as of the commencement of the

---

[2] The United States' motion to dismiss was confined to the Trustee's direct claims against the IRS for tax determination under 11 U.S.C. § 505. The Trustee responded to this motion to dismiss stating that he did not object to the dismissal, although he would have considered it more expedient to deal with the tax issues in the same proceeding as the bankruptcy issues. The Court granted the United States' motion to dismiss on June 19, 2016, specifically on the ground that the claims in the Complaint against the IRS directly for determination of tax liability under 11 U.S.C. § 505 were not ripe for decision. (The United States had asserted multiple additional grounds for dismissal.) The United States' separately-filed motion for summary judgment was unaffected by this dismissal, since it concerned the separate issues in the Complaint that are ripe for adjudication.

8

case. First, whether the Debtor had a beneficial interest in the Plan assets, either by virtue of her designation by Osborne as a beneficiary, her status as Osborne's spouse, and/or the entry by the State Court of its January 8, 2015 Judgment Entry, which approved the division of the Plan assets between the Debtor and Osborne. Second, whether the Debtor had acquired a present interest in the Plan assets, or as the Trustee argues, a mere equitable claim to a distribution from marital assets, pursuant to Ohio domestic relations law. The proper legal characterization of these distinct rights informs the further inquiries about what is or is not excluded from property of the bankruptcy estate and what property of the bankruptcy estate is exempt.

I.   **The Debtor's Beneficial Interest in the Plan's Assets Is Not Property of the Estate.**

   A.   **The State Court's January 8, 2015 Judgment Entry Constitutes a "Domestic Relations Order."**

The Judgment Entry states that "the proposed divisions of assets and debts is fair and equitable," and that the proposed separation agreement was "approved" and "adopted." (Docket No. 24 at ¶17 and Ex. F.) The State Court issued this order after a hearing in open court in which the agreed property division was read into the record. (Docket No. 24 at ¶¶15-16 and Ex. E.) The Judgment Entry also granted the divorce of the couple and directed the Debtor's divorcing spouse to attend a parenting seminar. *Id.* While the Judgment Entry provided that its terms would be incorporated into a future final decree, it did not provide for a stay of its effectiveness. Moreover, unlike the situation in *In re Greer*, 242 B.R. 389, 394-95 (Bankr. N.D. Ohio 1999), the Judgment Entry here was signed by a state court judge, not a magistrate whose decision could "only become effective when actually adopted by a court of competent jurisdiction." *Id.* at 394. The fact that the parties failed to file the contemplated final decree within 21 days as ordered does not change the fact that the State Court had already entered an order that approved the division of property and required that the ultimate final decree be consistent with and

9

incorporate the Judgment Entry. The fact that the Judgment Entry would be incorporated into the later final decree did not in any way condition its effectiveness. Indeed, the Judgment Entry conclusively determined that the final decree would be required to incorporate its terms, including the agreed upon division of property. This division included an even split of the Plan assets.

Therefore, the Court concludes that the January 8, 2015 Judgment Entry constitutes a domestic relations order of the State Court vesting the Debtor with right to an equal division of the Plan assets between her and her divorcing spouse.

### B. The State Court Judgment Entry Vested the Debtor With the Rights of a Beneficiary in the Plan.

The Trustee argues that nothing short of a QDRO could vest a non-participant spouse with non-alienable rights to her spouse's retirement plan in which he was the employee and the plan participant. The Trustee relies primarily on *In re Burgeson*, 504 B.R. 800 (Bankr. W.D. Pa. 2014) (Deller, C.J.) in advancing this position. *Burgeson* concerned a debtor who had filed a divorce action against her husband thirteen months before filing her bankruptcy petition. Her husband was a participant in his employer's pension plan and she, like the Debtor here, had never been employed by her husband's employer.

As of the petition date, the *Burgeson* debtor had not obtained either an adjudication of her claim for equitable distribution of marital assets or a divorce decree. *Id.* at 802. The debtor had certainly not yet obtained a QDRO transferring to her assets from her husband's pension plan. *Id.* at 803. Moreover, the court found the debtor had "not proven or alleged that either her Ex-Husband or the Pension's terms designate[d] her as a beneficiary." *Id.* at 804.

The Trustee exaggerates the *Burgeson* reasoning so as to apply it to the facts of this case. *Burgeson* does not state that a QDRO is required to vest a divorcing debtor with a beneficial

interest in her spouse's retirement plan. Rather, *Burgeson* observed that debtors obtain such interests when they obtain either a QDRO or an order "delineating the debtor's ownership interest in the pension plan prior" to the petition date. *Id.* at 804 (emphasis added).

Moreover, the bankruptcy court in *In re Dively,* 522 B.R. 780 (Bankr. W.D. Pa. 2014) (Deller, C.J.) — authored by the same bankruptcy judge who decided *Burgeson* — distinguished *Burgeson* by emphasizing the significance of a domestic relations order adjudicating a property division, even if it does not immediately implement that division. In *Dively*, the domestic relations court had entered a prepetition domestic relations order that was not a QDRO, but nevertheless set forth and approved the property settlement between the parties. *Dively* elaborated on the distinction as follows:

> In both *Burgeson* and *Urmann* [523 B.R. 472 (W.D. Pa. 2014)], the trustee was permitted to recover pension or retirement funds titled in the name of the non-debtor ex-spouse only. The reason why the trustee in those cases was permitted to liquidate the assets was because the debtors in *Burgeson* and *Urmann* had no prepetition vested right to the pension or retirement interests at issue. This conclusion in *Burgeson* and *Urmann* was supported by the fact that the debtors in those cases had neither a QDRO issued in their favor, *nor were they parties to a marital settlement agreement (or order of court)* that provided for the equitable distribution of the retirement accounts to them as of the filing of their respective bankruptcy cases.

*Dively*, 522 B.R. at 786 (emphasis added).

The January 8, 2015 Judgment Entry was not a final decree, but ERISA does not distinguish between final decrees and other domestic relations orders; it distinguishes only between domestic relations orders and qualified domestic relations orders. *Compare* 29 U.S.C. § 1056(d)(3)(B)(i) *with* 29 U.S.C. § 1056(d)(3)(B)(ii). A domestic relations order is a sufficient independent basis for a spouse to obtain a vested beneficial interest in an ERISA-qualified plan. "A person awarded a lump-sum distribution from an ERISA plan pursuant to a divorce decree has a direct interest in plan funds while the plan reviews the DRO to determine whether it constitutes a QDRO." *Nelson v. Ramette (In re Nelson),* 322 F.3d 541, 544 (8th Cir. 2003). A

11

domestic relations order, therefore, vests the spouse with rights protected by ERISA. The QDRO, by contrast, is necessary to take the next step of transferring the assets into the spouse's name in her own qualified plan or individual retirement account. As explained by the Ninth Circuit Court of Appeals, "[t]he QDRO provisions of ERISA do not suggest that [an alternate payee] has *no* interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained." *In re Gendreau,* 122 F.3d 815, 819 (9th Cir. 1997) (quoted by *Nelson*, 322 F.3d at 544).

For this reason, regardless of other facts or circumstances, the Debtor in this case became an ERISA-qualified beneficiary of the Plan no later than January 8, 2015, when the State Court entered its Judgment Entry, which constitutes a domestic relations order directing the equal division of the Plan assets that are marital property of the Debtor and her ex-husband, Todd Osborne.

## C. The Debtor Was Already a Beneficiary of the Plan Before Obtaining a Domestic Relations Order Because She Was a Named Beneficiary and Because ERISA Requires Spouses To Be Beneficiaries in Qualified Retirement Plans Unless Those Rights Are Expressly Waived.

While the State Court's Judgment Entry accorded the Debtor vested rights as a beneficiary of the Plan, the circumstances of the Debtor's case and her husband's Plan provide her with a separate, independent basis to establish herself as a vested beneficiary of the Plan account at the time of the bankruptcy filing. The parties have stipulated that Osborne expressly designated her as a beneficiary of the Plan. In addition, no formal or express designation of a participant's spouse as a beneficiary is required. *See, e.g.,* 29 U.S.C. § 1055(a) (all ERISA-qualified plans must provide for qualified joint and survivor annuities whenever a vested participant does not die before the date benefits begin, and for a qualified preretirement annuity when the participant spouse dies before the starting date and his or her spouse survives). The

12

Summa Plan contains such a provision automatically designating the spouse of a married plan participant as that participant's beneficiary at Section 6.1(b) of the Plan:

> Each Participant may file with the Committee a written designation of the Beneficiary or Beneficiaries to receive payment on his death. If the Participant is married, his Spouse shall be the Beneficiary 100% of his Vested Accrued Benefit … payable in a single sum, unless the Participant designates an alternate beneficiary and his Spouse consents to that designation in a Qualified Waiver.

"Even a plan participant cannot defeat a nonparticipant surviving spouse's statutory entitlement to an annuity." *Boggs v. Boggs*, 520 U.S. 833, 844 (1997). ERISA contains detailed provisions regarding the form of written waiver required for a spouse to surrender her statutorily mandated benefits, which must among other things be witnessed by a plan representative or notary public. *See* 29 U.S.C. § 1055(c)(2)(A). Section II.jj of the Plan, describing a Qualified Waiver, follows the restrictive framework required by ERISA. (Docket No. 24 at ¶8 and Ex. B.)

In both ERISA and the Plan, such automatic beneficiary designations are couched in terms of beneficial interests payable upon death. However, it is evident from provisions relating to the rights of divorcing spouses that the automatic beneficiary designations apply in that context as well. ERISA's qualified domestic relations order provision, which is the mechanism for distributing a court-approved marital share of a retirement account to a divorcing spouse, *see Gendreau,* 122 F.3d at 819, incorporates the requirements of 29 U.S.C. § 1055 as well, generally treating a former spouse similarly to a surviving spouse. *See, e.g.,* 29 U.S.C. § 1056(d)(3)(F).

Therefore, separate and apart from the Judgment Entry, the Debtor's status as Osborne's spouse and his designee as beneficiary were independently sufficient to cause the Debtor to be a vested beneficiary of the Plan on the day she filed her voluntary petition commencing this chapter 7 case.

13

**D.    The Debtor's Beneficial Interest in the Plan Assets Is Excluded from the Estate Pursuant to 11 U.S.C. § 541(c)(2).**

The Bankruptcy Code provides that "a restriction on the transfer of a beneficial interest of the debtor in a trust[3] that is enforceable under applicable nonbankruptcy law is enforceable in a [bankruptcy case]."  11 U.S.C. § 541(c)(2).  This provision, expressly referenced in Bankruptcy Code Section 541(a) as an exception to the property constituting the estate, "entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law."  *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).  All ERISA pension plans are required to include such a clause: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."  29 U.S.C. § 1056(d)(1).  The Summa 403(b) Plan includes such a clause at Section 13.9 thereof, prohibiting any assignments or other transfers of benefits by either participants or beneficiaries of the Plan.  (Docket No. 24 Ex. B at 53.)  *Patterson* and 11 U.S.C. § 541(c)(2) form the backbone of the United States' primary argument in its motion for partial summary judgment and supporting briefing, which urges that the Debtor's interest in

---

[3]  The Trustee's briefing does not expressly contest the status of the Plan's 403(b) custodial accounts as being held in trust within the meaning of 11 U.S.C. § 541(c)(2).  However, the United States disclosed a split in authority on that issue in its brief.  In *In re Adams*, 302 B.R. 535 (6th Cir. B.A.P. 2003), a divided bankruptcy appellate panel held that assets in 403(b) plan custodial accounts became property of the bankruptcy estate notwithstanding 11 U.S.C. § 541(c)(2), in substantial part because 29 U.S.C. § 1103(b)(5) excepts 403(b) plan custodial accounts from the general requirement of 29 U.S.C. § 1103(a) that "all assets of an employee benefit plan shall be held in trust by one or more trustees."  *Id.*; *see Adams*, 302 B.R. at 522.  However, in *In re Quinn*, 327 B.R. 818 (W.D. Mich. 2005), the district court agreed with the dissent in *Adams* and held that the debtor's interest in his retirement plan had sufficient functional characteristics of a trust to be "tantamount to a trust" and were, in any event, excluded from the estate pursuant to 11 U.S.C. § 541(c)(2) as interpreted by the U.S. Supreme Court in *Patterson v. Shumate*, 504 U.S. 753 (1992).  *Quinn*, 327 B.R. at 829; *see also Morter v. Farm Credit Services*, 937 F.2d 354, 358 (7th Cir. 1991) ("The proper inquiry under section 541(c)(2), then, is not whether the accumulated funds are in a 'traditional' spendthrift trust, but whether the retirement plan bars the beneficiary and his creditors from reaching the funds.  If it does, the plan is tantamount to a spendthrift trust under state law.")  While the *Adams* panel makes an interesting textualist argument, the Court views the *Quinn* decision, and the *Morter* decision on which it relied, as more closely aligned with the Supreme Court's decision in *Patterson*, which expressly reads 11 U.S.C. § 541(a)(2) to apply to "any interest in a *plan or trust*" subject to an enforceable transfer restriction, specifically including the anti-alienation provision ERISA requires in ERISA-qualified plans.  *Id.* at 758.

14

the Plan cannot be included in property of her bankruptcy estate and distributed to creditors by the Trustee.

The QDRO mechanism in ERISA is set forth in the many subparagraphs of 29 U.S.C. § 1056(d)(3). If an order qualifies as a QDRO, then the anti-alienation provision required by 29 U.S.C. § 1056(d)(1) would not prohibit the distribution of plan assets to an alternate payee who was either a divorcing spouse or surviving child. However, it is important to emphasize that the QDRO mechanism is an exception to the general anti-alienation rule.[4] Of course, if the domestic relations court had already entered a QDRO, the Debtor would clearly be treated as a beneficiary within the meaning of ERISA. "A person who is an alternate payee under a qualified domestic relations order shall be considered for purposes of any provision of [ERISA] a beneficiary under the Plan." 29 U.S.C. § 1056(d)(3)(J); *see also Nelson*, 322 F.3d 541, 544 (8th Cir. 2003). The Trustee concedes that if the domestic relations court had already entered a QDRO, her interest in the Plan account assets would be excluded and the Trustee would not have brought this action. (Docket No. 35 at 3.)

In the Court's view, the rule of *Patterson* applies to this case as well. *Patterson* held that Section 541(c)(2)'s exclusion of trusts containing restrictions on transfers enforceable under applicable nonbankruptcy law from property of the estate extends to a debtor's interests as a plan participant in an ERISA-qualified retirement account. *Patterson's* reasoning, however, was not limited to plan participants, but rather extended to "*any* interest [held by a debtor] in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law."

---

[4] See Section III, *infra,* regarding the Trustee's argument that the Court can and should grant him leave to seek from the state court entry of a QDRO naming him as a beneficiary of the Plan on the grounds that he has squeezed his feet into the Debtor's shoes.

*Patterson v. Shumate,* 504 U.S. at 758 (emphasis added). Indeed, the statute itself refers to "a *beneficial* interest of the debtor in a trust." 11 U.S.C. § 541(c)(2) (emphasis added).

Moreover, the line of cases from the Western District of Pennsylvania cited favorably by the Trustee support this conclusion. *In re Dively* held that the interest of a debtor, who had obtained a divorce decree dividing marital assets, in her spouse's pension plan was "conceivably outside the scope of 'property of the estate.'" *Dively,* 522 B.R. at 786. The bankruptcy court in *Dively* did not make a final ruling on the exclusion or exemption of the debtor's interests in the pension assets from the estate, but denied the trustee's motion on the basis that the debtor *might* be entitled to such an exclusion or exemption:

> Simply stated, if Ms. Dively's pension interests fall under the umbrella of 11 U.S.C. §§ 541(c)(2), 522(b)(3)(C), 522(d)(10)(E) or 522(d)(12), the assets would be excluded from "property of the estate" and the trustee in this case may not make any claim to the assets for the benefit of creditors. *See Nelson v. Ramette (In re Nelson),* 322 F.3d 541 (8th Cir.2003). Rather, Ms. Dively may retain such funds to augment her fresh start after her bankruptcy case is administered and closed.

*Id.* at 785. On appeal, the district court went further and held that the funds were indeed properly excluded from the bankruptcy estate. *Walsh v. Dively*, 551 B.R. 570, 576 (W.D. Pa. 2016).

Therefore, the Court concludes that the beneficial interest of the Debtor in Osborne's 403(b) Plan, established both by the State Court's Judgment Entry of January 8, 2015, as well as Osborne's designation of the Debtor as beneficiary and the self-executing spousal beneficiary designation provisions of the Plan as required by ERISA, is excluded from property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), as interpreted by the U.S. Supreme Court in *Patterson v. Shumate,* 504 U.S. 753 (1992).

16

**II.**    **The Debtor's Contingent Interest in a Share of the Plan Assets Under Ohio Domestic Relations Law Is Exempt From the Trustee's Administration Under Both Ohio and Federal Exemption Statutes.**

The Trustee's initial argument in his Motion and Complaint is that the Debtor has no vested beneficial rights in the Plan that are excepted from the bankruptcy estate pursuant to Section 541(c)(2) because (1) the Debtor is not a Plan beneficiary while her now ex-husband remains living, (2) the Judgment Entry does not constitute a domestic relations order, or any order at all, and (3) even if the Judgment Entry were an order, it was incapable of granting the Debtor a vested beneficial interest in the Plan because it was not a QDRO.  The Court has rejected those arguments in Section I, *supra,* and on that basis has concluded that the Debtor's beneficial interest in the Plan is excluded from the bankruptcy estate.  This conclusion could, and perhaps should, end the Court's inquiry.

However, the Trustee's now rejected premise led to his argument that even though the Debtor had no vested beneficial right to assets in the Plan, she nevertheless had an equitable claim to a distribution of Plan assets, along with other marital assets, as a divorcing, but not yet divorced spouse.  The Trustee asserts that this equitable claim is property of the bankruptcy estate notwithstanding Section 541(c)(2)'s exclusion of vested rights in an ERISA-qualified retirement plan.  The Trustee further contends that this equitable claim to a distribution of marital assets is not exempt pursuant to 11 U.S.C. § 522.  In order to address the Trustee's arguments comprehensively, the Court analyzes the Debtor's rights in the Plan assets as a divorcing spouse and the extent to which such rights are exempt under Section 522.

**A.** **Upon the Filing of Her Divorce Action, the Debtor Acquired a Contingent Interest in Her Husband's Retirement Plan As a Marital Asset Pursuant to Ohio Domestic Relations Law.**

In Ohio divorce proceedings, "the court shall … determine what constitutes marital property and what constitutes separate property … [and] shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). When undertaking this determination, "the court has jurisdiction over all property, excluding the social security benefits of a spouse … in which one or both spouses have an interest." *Id.* "Marital property" includes, *inter alia*, "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). The parties have stipulated that Osborne opened his account in the Plan after he married the Debtor and that all of his contributions to the Plan were made during their marriage. The Plan assets therefore constitute marital assets. The State Court treated them as such.

Ohio bankruptcy courts have interpreted these statutes to mean that upon a spouse filing for divorce, each spouse acquires a contingent interest in all marital property of the marriage. *In re Greer*, 242 B.R. 389, 395-96 (Bankr N.D. Ohio 1999); *In re Street*, 395 B.R. 637, 643-44 (Bankr. S.D. Ohio 2008); *see also In re Dzielak*, 435 B.R. 538, 546 (Bankr. N.D. Ill. 2010) (applying Illinois law).[5] This contingent interest arises pursuant to state domestic relations law independent of any vested beneficial interest arising from ERISA, the terms of the retirement plan, and/or a domestic relations order. It applies to all of the marital property, regardless of the

---

[5] In *Dzielak*, the court noted specifically that the debtor did not raise the argument that her potential interest in the retirement plan at issue was not property of the bankruptcy estate pursuant to Section 541(c)(2). 435 B.R. at 546. Although silent on the point, the same seems to be true in *Greer* and *Street* where the opinions do not address the issue.

name in which such property may be titled, and is not limited to retirement plan assets.

However,

> such a property interest is limited. Specficially, given the fact that neither spouse is assured of receiving any specific item of 'marital property,' the Court holds that upon a spouse filing for divorce, and until a formal distribution of the parties' property is made, the interest of the spouse acquires in the other's separately titled property is strictly contingent, therefore subject to later divestment if the state court with jurisdiction over the parties' property does not enter an order awarding the property to a non-title holding spouse. The effect of this is that although contingent interests are clearly property of the bankruptcy estate pursuant to § 541(a), the contingency of the interest may prevent the bankruptcy trustee from ever utilizing the property for the benefit of the bankruptcy estate given the fact that federal law clearly holds that the extent to which an interest in property is limited in the hands of the debtor, it is equally limited in the hands of the bankruptcy estate.

*In re Greer*, 242 B.R. at 396-97 (citations omitted).

The Trustee argues that the divorce complaint creates a mere equitable *claim* and thereby attempts to separate the divorcing debtor's rights from the nature of the underlying assets. This sleight of hand suggests that the divorcing debtor's rights are reduced to claims -- essentially either choses in action or accounts receivable -- assets that would require their own designation in an applicable exemption statutes in order to be exempt.

However, Ohio domestic relations law instead creates in both spouses a contingent interest in the underlying marital property itself. While this interest is contingent, it is not speculative; it is a present interest in each item of marital property. *Greer* and *Street*, with which this Court completely agrees, hold that the filing of a divorce proceeding in Ohio gives rise, pursuant to R.C. 3105.171(B), to a contingent *interest* in the marital property on the part of both spouses, not just a generalized equitable *claim*. *Greer* found that "it was the intention under Ohio law to confer upon a spouse an interest in any property that is or would qualify as 'marital property,' regardless of whether such property was separately titled." *Id.* at 396. Since "neither spouse is assured of receiving any specific item of 'marital property,' … the interest a spouse

19

acquires in the other's separately titled property is strictly contingent," *id.*, but it does exist. Thus, "upon the commencement of the divorce proceeding … [the debtor] obtained an interest in the retirement plan and retained that interest as of the petition date, entitling her to utilize the exemption." *Street*, 395 B.R. at 643.[6]

In this case, where the Debtor filed her bankruptcy petition after filing her divorce action, the Debtor had just such a present, contingent interest in the marital property, in particular the Plan assets, as of the commencement of this case.[7] Therefore, the Trustee cannot avoid the question of whether the Debtor's interest in that property is subject to exemption.

**B.    The Debtor's Contingent Interest in the Plan Is Exempt Under Both Ohio and Federal Exemption Statutes Applicable In This Bankruptcy Case.**

An individual debtor may exempt certain interests in property from the estate. *See* 11 U.S.C. § 522. Initially, there are two alternative categories of exemptions that debtors may choose, the so-called "state" exemptions available to any debtor (bankrupt or not) by state law, or the "federal" exemptions set out in 11 U.S.C. § 522(d). However, as permitted by 11 U.S.C. § 522(b)(2), Ohio has specifically provided that Ohio-domiciled debtors are not eligible to claim the federal exemptions under 11 U.S.C. § 522(d). R.C. 2329.662. Therefore, the exemptions applicable to individual debtors in Ohio are uniformly those set forth in 11 U.S.C. § 522(b)(3),

---

[6]  The bankruptcy court in *In re Dzielak*, 435 B.R. 538 (Bankr. N.D. Ill. 2010), noted that there are some states, such as Connecticut and New York, in which the mere commencement of a dissolution action does not create a legal or equitable interest in either spouse with respect to the other spouse's property. *Id.* at 547 (distinguishing such states from Illinois, the law of which does create such an interest upon the commencement of a divorce action). However, under the law of Ohio, as in Illinois, such an interest arises as of the commencement of a divorce action.

[7]  For the reasons set forth in Section I of this Memorandum Opinion, the Debtor actually had more than a present contingent interest in the Plan assets. She had a vested beneficial interest in half of those Plan assets. The point here is that even if she did not have such vested beneficial interest -- either because she was not named a beneficiary, the Judgment Entry had not been previously entered, or for any other legal or factual reason -- Ohio domestic relations law would have given her upon filing the divorce action a present contingent interest in marital property capable of exemption if such assets qualified under applicable exemption statutes.

20

which incorporates Ohio's exemption statutes.[8]  Those exemptions include an exemption, with no dollar limitation, for a debtor's "rights to or interest in a pension, benefit, annuity, retirement allowance, or accumulated contributions," R.C. 2329.66(A)(10)(a), and a debtor's "rights or interests in the assets held in, or to directly or indirectly receive any payment or benefit under, any individual retirement account [or] individual retirement annuity."  R.C. 2329.66(A)(10)(c). These exemptions expressly apply to any "alternate payee under a qualified domestic relations order (QDRO) or other similar court order."  R.C. 2329.66(A)(10)(f).

Moreover, in all bankruptcy cases in which the debtor uses the Section 522(b)(3) exemptions, regardless of what state exemptions may be provided and incorporated by 11 U.S.C. § 522(b)(3)(A), the Bankruptcy Code also allows a debtor to exempt "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986."  11 U.S.C. § 523(b)(3)(C).  It is undisputed that the Summa Health 403(b) Plan meets this definition.

The contingent interest created by R.C. 3105.171(B) is the fatal flaw in the Trustee's argument that the Plan assets are property of the bankruptcy estate and are not exempt.  The Trustee's central contention is that the Debtor did *not* have an interest in the Plan assets themselves, which the Trustee concedes would be exempt.  (Docket No. 35 at 3.)  Instead, the Trustee argues that the Debtor had a domestic relations law claim for equitable distribution of marital assets, which was at that point sufficiently undifferentiated and inchoate that it was not specifically an interest in the Plan assets.  Thus, for instance, in the Trustee's reply (Docket No. 40), he argues that the United States mischaracterizes the claim asserted by the Trustee.  The

---

[8] The applicable state exemptions may vary if a debtor has not lived in Ohio for the 730 days preceding the petition. *See* 11 U.S.C. § 522(b)(3)(A).  Because that has not been alleged to be the fact in this case, the Debtor is eligible for the exemptions provided in R.C. 2329.66.

Trustee "seeks a determination that the equitable claim to a portion of Plan assets is property of the estate." (Docket No. 40 at 1.) "The Trustee is not seeking the funds, only Debtor's claim." *Id.* But the Trustee goes on to state, in his own further elaboration of his example, precisely the problem with this sophistry. "[T]he Trustee is not seeking this Court to assign Debtor's interest in the Plan assets. Only her claim to whatever portion of marital assets, which include the Plan assets, that the state court deems appropriate to award." *Id.* at 3. "Debtor's equitable claim could be for a boat, a certificate of deposit, or stock depending on what the assets of the marriage happened to be." *Id.* at 2. Indeed it could. But to the extent such unliquidated equitable claim for distribution ultimately is for exempt assets, it does not become a claim for nonexempt assets simply by virtue of the fact that the divorce had been filed as of the date of the petition, but no QDRO had yet been entered.

The structure of 11 U.S.C. § 522(b)(3) is highly revealing of Congress' policy with respect to the paramount importance of retirement funds not coming into bankruptcy estates: Sections 522(b)(3)(A) and (b)(3)(C) stand at the same level. In other words, even if a state were to (a) require individual debtors to use the § 522(b)(3) exemptions, as Ohio does, and (b) did not include in its own state statutes an exemption for retirement funds held in tax-exempt accounts pursuant to the applicable Internal Revenue Code sections, the Bankruptcy Code would nevertheless exempt such assets. Moreover, since retirement funds exempt under I.R.C. 401, 403, 408, 408A, 414, 457, or 501(a) are also included in the so-called federal exemptions applicable in some states at the election of the debtor, *see* 11 U.S.C. § 522(d)(12), the ultimate lesson of the Bankruptcy Code exemption scheme is that no matter what laws a state might enact and no matter what decision a debtor might make in states where debtors may decide between

22

state and federal exemptions, retirement funds governed by those provisions of the Internal Revenue Code will be exempt.

Therefore, even if the contingent interest created by Ohio domestic relations law exists separate and apart from the Debtor's excluded beneficial interest in the Plan account as a result of the Debtor's marital status, her designation as a beneficiary, or her rights pursuant to the Judgment Entry, the Debtor may nevertheless exempt that interest from the bankruptcy estate.

### C. The Pennsylvania Cases Relied Upon by the Trustee Are Both Distinguishable and Unpersuasive.

The Trustee cites two cases, both from the Western District of Pennsylvania and from the same line of caselaw, in support of his position. The foundational case of the Trustee's argument is *In re Burgeson*, 504 B.R. 800 (Bankr W.D. Pa. 2014). In *Burgeson*, many facts were similar to the facts here: a divorce proceeding had been filed but no qualified domestic relations order had been entered therein when the spouse, who was not a participant in the pension plan at issue, filed bankruptcy. The same facts also presented themselves in *Urmann v. Walsh*, 523 B.R. 472 (W.D. Pa. 2014). Both cases arose from a trustee's objection to exemptions claimed by debtors in ERISA plan assets. In *Burgeson*, the exact type of pension plan at issue was not specified, but the strong implication is that it was a traditional defined benefit pension plan. In *Urmann*, the plan at issue was a 401(k) plan. *Urmann*, 2014 WL 1491328 at *1.

Pennsylvania domestic relations law also appears to follow the same rule as Ohio's with respect to the interests that arise in marital property when a divorce is filed. *See In re McCulley*, 150 B.R. 358, 361 (Bankr. M.D. Pa. 1993) ("the date of entitlement to a spouse with regard to marital property is on the date the divorce is filed").

In both *Burgeson* and *Urmann*, the court held, as the Trustee would have this Court hold, that the debtor had only a claim for equitable contribution under the state's domestic relations

23

law and that such claim was not actually an interest in pension plan assets subject to ERISA anti-alienation protections that the Bankruptcy Code would respect via 11 U.S.C. § 541(c)(2), and more important, not subject to bankruptcy exemptions available under 11 U.S.C. § 522(d)(10) or (d)(12). (Pennsylvania allows debtors to utilize the federal exemptions, and the debtors in both *Burgeson* and *Urmann* did so.)

There is one potentially notable distinction between these Pennsylvania cases and this one: in both *Burgeson* and *Urmann*, the debtor was not a beneficiary under the plan at issue.[9] This was essential to both holdings. In *Burgeson,*

> Because no QDRO existed as of the Petition Date, and the Debtor was not a participant nor named as a beneficiary of the Pension, the Debtor had no beneficiary interest in the Pension as of the Petition Date; rather, at the time of filing the bankruptcy petition, the Debtor had an interest in a claim for equitable distribution.

*Id.* at 805. The *Urmann* court expressly followed the logic of *Burgeson*. *See Urmann*, 523 B.R. at 479.

In the instant case, the parties have stipulated that the Debtor in this case is the designated beneficiary of Osborne's interest in his Plan account. As such, even before the entry of a qualified domestic relations order, the Debtor here had a beneficial interest in the Plan assets as of the petition date. Moreover, such a beneficial interest was created by a domestic relations order (even if it was not a QDRO) entered by the State Court prior to the Debtor's bankruptcy filing. *See, e.g., In re Gendreau*, 122 F.3d 815 (9th Cir. 1997) ("The QDRO provisions of ERISA do not suggest that [an alternate payee] has no interest in the plans until she obtains a QDRO, they merely prevent her from enforcing her interest until the QDRO is obtained.") Therefore, *Burgeson* and *Urmann* are distinguishable on their facts.

---

[9] The debtor's lack of beneficiary status in *Urmann* is not expressly restated in the district court decision, but was found as fact in the bankruptcy court decision below it and was undisturbed on appeal. *See In re Urmann*, 2014 WL 1491328, *3 (Bankr. W.D. Pa. Apr. 15, 2014).

The Court is also unconvinced by the reasoning of *Burgeson* and *Urmann*. While *Burgeson* and *Urmann* found their respective debtor's lack of beneficiary status to be an essential issue, *Greer* and *Street* did not turn on the beneficiary status of the nonparticipant spouse. They concluded, instead, that the present, contingent interests in marital assets obtained by operation of domestic relations law upon filing a divorce complaint were sufficient to be considered for exemption under applicable statutes based on the nature of each specific marital asset, not an abstract claim for distribution. The Court adopts the analysis of the two Ohio bankruptcy courts instead of that of the courts from the Western District of Pennsylvania. Even if the Debtor in this case had not already been a beneficiary of the Summa Plan, she would have nevertheless gained a contingent interest in the Plan account assets upon the filing of the divorce action, an interest this Court has already concluded is exempt under 11 U.S.C. § 522(b)(3)(C) and R.C. 2329.66(A)(10).

III.     **Even if the Debtor Had Only a Claim for Equitable Contribution, the Court Cannot Compel the Debtor or the State Court to Issue a QDRO With the Trustee as Direct Payee.**

The Trustee appears to be aware of the difficulty posed by the exemption issue. Perhaps this is why his Complaint and his legal argument in support of his Motion make an additional extraordinary demand: that the Court enter an order "authorizing and empowering the trustee to execute a QDRO directing distribution of such funds to the estate and compelling the defendant, Todd Osborne, to join in such Qualified Domestic Relations Order." (Compl. ¶ 12.) In later briefing, the Trustee argues that this will defeat the debtor's exemption rights: "The United States argues that Debtor's exemption rights will defeat any claim the Trustee may have to a portion of the Pension Plan. However … the issuance of a QDRO to the Trustee avoids this issue." (Docket No. 35 at 6.) "The Trustee is asserting his interest in Debtor's equitable claim to

a portion of marital assets. If successful, the Trustee will seek to liquidate this claim by having the state court issue a QDRO directly to the Trustee. Debtor will never have any interest in the Plan to which an exemption can attach." (Docket No. 40 at 5.)

Bankruptcy courts generally avoid invasions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court colleagues and their established expertise in such matters. *In re White*, 851 F.2d 170, 173 (6th Cir. 1988) (quoting *In re MacDonald*, 755 F.2d 715, 717 (9th Cir. 1985)). However, in addition to general doctrinal reasons for not intruding upon the domestic relations court process, ERISA does not authorize a QDRO to a creditor or a creditor's representative.

The Court's equitable powers end where express statutory limits begin. Under ERISA, a QDRO can only create or recognize the right of an "alternate payee." 29 U.S.C. § 1056(d)(3)(B)(i)(I). "Alternate payee" is a defined term in the same statute. "The term 'alternate payee' means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant." 29 U.S.C. § 1056(d)(3)(K).

The Trustee argues that his status a trustee gives him the ability to "stand in the shoes" of the Debtor to obtain a QDRO pursuant to 11 U.S.C. § 541 and *In re Dively*. (Docket No. 35 at 4.) *Dively* determined that "the fact that a bankruptcy trustee is not specifically identified as an 'alternate payee' or 'beneficiary' under ERISA is of no moment," 522 B.R. at 784, because of 11 U.S.C. § 105(a) (empowering bankruptcy courts to issue any "order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]") and 29 U.S.C. § 1144(d), which provides that "[n]othing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." *Dively* proceeded to hold that

26

court authorization for the trustee to seek a QDRO was an "order, process, or judgment" under Section 105, and that ERISA did not preclude it. *Id.* at 784.

The Court does not find *Dively* persuasive on this issue. It is true that 29 U.S.C. § 1144(d) does not limit the application of 11 U.S.C. § 105(a). But that truism ignores a more fundamental point: the Court's equitable powers under Section 105(a) are inherently limited. "While endowing the court with general equitable powers, section 105 does not authorize relief inconsistent with more specific law." *In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610, 615 (B.A.P. 9th Cir. 1990); *see also In re Dues*, 98 B.R. 434, 437 (Bankr N.D. Ind. 1989) ("Section 105 … may only be used as a basis for the court's action where other applicable law does not address the situation."). The Court cannot use its equitable powers to add a new category of persons eligible to be alternate payees under ERISA when that list is already set forth in federal statute.

## CONCLUSION

The Debtor's interest in the Summa 403(b) Plan account and the assets therein by virtue of her status as a beneficiary under the Plan were excluded from property of the bankruptcy estate, by operation of 11 U.S.C. § 541(c)(2). In addition, the Debtor's contingent interest in the Plan account assets that arose by virtue of her divorce filing in Ohio state court was subject to exemption pursuant to 11 U.S.C. § 522(b)(3)(C) and R.C. 2329.66(a)(10).

The Court will enter a separate form of judgment granting summary judgment in favor of the United States and the Debtor consistent with this Memorandum Decision, granting their respective motions for summary judgment, and denying the Trustee's Motion. This decision resolves all claims asserted by the Plaintiff Trustee against Defendants the Debtor, the United States/IRS, and Osborne. The crossclaim asserted by the Debtor against Osborne is not resolved

15-05094-amk    Doc 44    FILED 03/31/17    ENTERED 03/31/17 16:24:26    Page 27 of 28

by this decision and remains pending. The Court finds that there is no just reason for delay, pursuant to Fed. R. Civ. P. 54(b) and Fed. R. Bankr. P. 7054, to enter final judgment on the Trustee's claim while the Debtor's crossclaim remains pending. Judgment on the Trustee's claims in this adversary proceeding will not be deemed entered until the separate form of judgment has been docketed by the Clerk.

# # #

15-05094-amk    Doc 44    FILED 03/31/17    ENTERED 03/31/17 16:24:26    Page 28 of 28